In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-12-00378-CV**

_____

**ANDREA L. VIDRINE, Appellant**

**V.**

**THE CENTER FOR THE PERFORMING ARTS AT THE WOODLANDS D/B/A CYNTHIA WOODS MITCHELL PAVILLION AND THE WOODLANDS LAND DEVELOPMENT COMPANY, L.P., Appellees**

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 11-12-13089 CV**

**MEMORANDUM OPINION**

Andrea L. Vidrine brought suit against the Center for the Performing Arts at the Woodlands d/b/a Cynthia Woods Mitchell Pavilion ("the Pavilion") and the Woodlands Land Development Company ("Woodlands") after she tripped and fell on stairs after leaving a concert at the Pavilion. Vidrine appeals the trial court's

1

order granting summary judgment in favor of the Pavilion and Woodlands. We affirm the orders of the trial court.

## I.    BACKGROUND

Vidrine was injured when she fell down a set of steps along the Woodlands Waterway ("the Waterway") after leaving a concert at the Pavilion. At the time of the injury Vidrine was headed to her car, which was parked in a lot across from the Waterway. Vidrine filed suit against the Pavilion and Woodlands alleging that she was injured as a result of a dangerous condition. Vidrine specifically alleged that the stairs on which the accident occurred were not properly lit. Vidrine alleged that the Pavilion and Woodlands "negligently permitted the stairs to be unlit and/or improperly lit, negligently or willfully allowed such condition . . . and negligently or willfully failed to warn [her] of the condition[.]" Vidrine generally pleaded a cause of action for negligence asserting, among other things, that the Pavilion and Woodlands failed to maintain the stairs in a reasonably safe condition, failed to warn her of the dangerous condition, and failed to provide adequate lighting of the area in question. The Pavilion and Woodlands both filed hybrid motions for summary judgment. Summary judgment was granted in favor of both parties against Vidrine. This appeal followed.

2

## II.    STANDARDS OF REVIEW

We review a trial court's summary judgment ruling de novo. *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). To prevail on a traditional motion for summary judgment, the moving party must prove that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion[.]" Tex. R. Civ. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). In reviewing the trial court's ruling, we must (1) place the burden of showing there is no issue of material fact on the movant; (2) take all evidence favorable to the non-movant as true; and (3) indulge every reasonable inference in favor of the non-movant. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005); *Nixon*, 690 S.W.2d at 548-49; *see also Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). "A defendant who conclusively negates at least one of the essential elements of the plaintiff's cause of action is entitled to summary judgment." *Little v. Tex. Dep't of Criminal Justice*, 148 S.W.3d 374, 381 (Tex. 2004).

A no-evidence motion for summary judgment is essentially a directed verdict granted before trial, to which we apply a legal-sufficiency standard of review. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003). In general, a defendant seeking a no-evidence summary judgment must assert that no

evidence exists as to one or more of the essential elements of the plaintiff's claims on which the plaintiff would have the burden of proof at trial. *Mathis v. RKL Design/Build*, 189 S.W.3d 839, 844 (Tex. App.—Houston [1st Dist.] 2006, no pet.). With the filing of the motion, the burden shifts to the nonmovant. *See Forbes Inc. v. Granada Biosciences, Inc.*, 124 S.W.3d 167, 172 (Tex. 2003). To avoid summary judgment, the nonmovant must present "more than a scintilla of probative evidence to raise a genuine issue of material fact." *Id*. More than a scintilla of evidence exists when the evidence allows reasonable and fair-minded people to differ in their conclusions. *Id*. Less than a scintilla of evidence exists when the evidence does "'no more than create a mere surmise or suspicion.'" *King Ranch*, 118 S.W.3d at 751 (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). When, as here, the trial court does not specify the grounds upon which it ruled, the summary judgment may be affirmed on any of the movant's theories that has merit. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 625 (Tex. 1996).

### III. SUMMARY JUDGMENT IN FAVOR OF WOODLANDS

Woodlands filed a traditional and no-evidence motion for summary judgment. Woodlands presented undisputed evidence that Woodlands Waterway is a linear park on private land, owned by Woodlands, as a private landowner. It also

4

presented undisputed evidence that Woodlands Waterway is open to the public and used for a variety of recreational purposes, including: walking, jogging, exercising pets, playing Frisbee, listening to music, enjoying nature, hosting various athletic events, sightseeing, kayaking, and canoeing. As one ground in its traditional motion for summary judgment, Woodlands argued that it could only be held liable to Vidrine for gross negligence. In support of this argument, Woodlands relied on the Recreational Use Statute. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 75.001-.007 (West 2011 & Supp. 2012). (Recreational Use Statute).

"The recreational use statute recognizes that landowners or occupiers, who open their property to the public for recreational purposes, provide a public benefit." *Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 658 (Tex. 2007). To encourage this use, the statute limits the liability of property owners who give permission to the public to enter the premises for recreation. *Id.*; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 75.002(c); *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). The statute "absolves property owners of liability for injuries to others using the property for recreation so long as the property owner does not engage in grossly negligent conduct or act with malicious intent or in bad faith." *City of Bellmead v. Torres*, 89 S.W.3d 611, 612 (Tex. 2002). The Statute states in pertinent part:

5

(c) If an owner . . . gives permission to another to enter the premises for recreation, the owner . . . by giving the permission, does not:

    (1) assure that the premises are safe for that purpose;

    (2) owe to the person to whom permission is granted a greater degree of care than is owed to a trespasser on the premises; or

    (3) assume responsibility or incur liability for any injury to any individual or property caused by any act of the person to whom permission is granted.

Tex. Civ. Prac. & Rem. Code Ann. § 75.002(c).

Woodlands argued that pursuant to the statute, Vidrine had the legal status of a trespasser and could only recover from Woodlands for gross negligence, malice, or bad faith. *See id.* § 75.002(c)(2). In its no-evidence motion, Woodlands argued that there was no evidence Woodlands owed Vidrine a duty to remedy the condition, no evidence Woodlands committed gross negligence, no evidence that Woodlands willfully or wantonly injured Vidrine, and no evidence that Woodlands acted with malicious intent or bad faith towards Vidrine. In her response, Vidrine argued that the Recreational Use Statute did not apply to exempt Woodlands from liability for general negligence. On appeal, Vidrine argues that the trial court erred in granting Woodlands' motion for summary judgment because she was using the Waterway solely as a method of ingress and egress between the concert at the Pavilion and its parking lot, and not for recreation.

6

## A. Application of the Recreational Use Statute

In determining whether the trial court erred in granting summary judgment, we must first determine whether the Recreational Use Statute applies. If it does, the statute limits Woodlands's liability by raising Vidrine's burden of proof to that of gross negligence, malicious intent, or bad faith. *See Flynn*, 228 S.W.3d at 659 (citing *Shumake*, 199 S.W.3d at 285-87). The Statute provides a non-exclusive list of activities that are considered "recreation[,]" including: hunting, fishing, swimming, boating, camping, picnicking, hiking, pleasure driving, nature study, cave exploration, water sports, bicycling and mountain biking, disc golf, dog walking, radio control flying, and "any other activity associated with enjoying nature or the outdoors." Tex. Civ. Prac. & Rem. Code Ann. § 75.001(3). Vidrine argues that her "use of the Waterway was only for ingress and egress between [t]he Pavilion and the parking lot" and "getting to one's car is not 'enjoying nature or the outdoors.'" Woodlands contends that Vidrine was walking along the Waterway, "and walking is a form of recreation."

The Texas Supreme Court has stated that a person's intent upon entering the premises is not controlling. *Torres*, 89 S.W.3d at 614. "It is what she was doing when she was injured that controls[]" the determination. *Id.* In support of its assertion that Vidrine was recreating on the premises, Woodlands cites cases in

7

which individuals were injured while walking in a park, including *City of Austin v. Saverse*, No. 03-11-00330-CV, 2011 WL 4507268, at *1 (Tex. App.—Austin Sept. 30, 2011, pet. denied) and *Russell v. City of Fort Worth*, No. 2-05-191-CV, 2006 WL 1351485, at *1 (Tex. App.—Fort Worth May 18, 2006, pet. denied).[1] However in both *Saverse* and *Russell*, the plaintiffs acknowledged that they were engaged in recreation on the premises at the time of their injuries. *See Russell*, 2006 WL 1351485, at *3 n.2 ("Russell acknowledges that the Recreational Use Statute applies to the incident in question."); *Saverse*, 2011 WL 4507268, at *1 ("Saverse filed suit against the City alleging that, while engaged in recreation, he was injured as a result of the City's gross negligence or willful or wanton acts."). *Saverse* and *Russell* are inapposite to the present case.

---

[1] Vidrine also relies heavily on *Dubois v. Harris Cnty.*, 866 S.W.2d 787 (Tex. App.—Houston [14th Dist.] 1993, no pet.). We note that the *Dubois* opinion was handed down nine years before the Texas Supreme Court's 2002 decision in *Torres*. *Compare Dubois*, 866 S.W.2d at 787, *with Torres*, 89 S.W.3d at 611. In *Dubois*, it was undisputed that the plaintiff was injured in a parking lot located on the park's premises. *Dubois*, 866 S.W.2d at 789. In upholding the trial court's determination that the Recreational Use Statute applied, the court found "that a structure used within a recreational area to provide parking for persons visiting the [recreational] area is within the meaning of the term 'premises[]'" as defined by the statute. *Id*. at 789-90; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 75.001(2). Additionally, the court found significant that the record contained "uncontroverted evidence that the area where the injury occurred was a park that appellant frequented in order to take walks along its nature trail." *Id*. at 790.

8

In *Homoky*, the plaintiff filed suit under a premises liability theory for injuries she sustained when she tripped and fell in a City-owned golf course clubhouse. *City of Plano v. Homoky*, 294 S.W.3d 809, 811-12 (Tex. App.—Dallas 2009, no pet.). At the time of her injury, the plaintiff was not playing golf. *Id*. at 816. She was walking from a restaurant in the clubhouse where she had been talking with friends, through the clubhouse, and towards the building's exit. *Id*. She argued that "simply walking across a room indoors" did not constitute recreation under the statute. *Id*. The Dallas Court of Appeals noted that "'playing golf'" would constitute "'recreation'" under the statute as an "'activity associated with enjoying nature or the outdoors.'" *Id*. But, the court disagreed with Homoky's characterization of her activity at the time of her injury as "'simply walking across a room indoors.'" *Id*. The Court considered the activity in context, and concluded, "Homoky's injury was related to the activity of playing golf." *Id*.

Unlike the plaintiffs in *Homoky*, *Saverse*, and *Russell*, Vidrine was not recreating on the premises on which she was injured. While "walking" or "strolling" may be a form of recreation under some circumstances, the undisputed evidence here establishes that Vidrine was only walking through the Waterway to get to the parking lot where her car was parked; not specifically to enjoy the natural beauty of the Waterway. One of our sister courts has concluded that the

intent of the statute is to "immunize land owners from suit where the injured party was engaging in activity which bears some risk of danger." *Sullivan v. City of Fort Worth*, No. 02-10-00223-CV, 2011 WL 1902018, at *7 (Tex. App.—Fort Worth May 19, 2011, pet. denied) (mem. op. on reh'g) (citing House Study Group, Bill Analysis, Tex. H.B. 749, 67th Leg., R.S. (1981)). In *Sullivan*, the plaintiff was injured while attending her granddaughter's wedding, held in the Japanese Garden, which was part of the city-owned Fort Worth Botanic Gardens. *Sullivan*, 2011 WL 1902018, at *1. While leaving the wedding, Sullivan fell on one of the designated footpaths and broke her ankle. *Id.* Like Vidrine, Sullivan claimed the lighting on the path, which included stone and wood steps, was inadequate. *See id.*

In arguing the Recreational Use Statute applied, the City asserted that the Japanese Garden, where the outdoor wedding was held, is a city park, thus, its purpose is for recreational use. *Id.* at *5. The court did not consider the fact that the Japanese Garden is a park as determinative of whether the Recreational Use Statute applied. *Id.* at *6. Considering the list of activities set forth in the statute, the court concluded that the statutory definition of recreation is not "so broad as to encompass all activity beyond work . . . as long as it is conducted outdoors." *Id.* The court further concluded that the intent of the statute is "to immunize land owners from suit where the injured party was engaging in activity which bears

some risk of danger." *Id*. at *7. In holding the Recreational Use Statute did not apply, the court stated:

> A wedding is not the type of activity in which people engage assuming a risk of injury from physical activity. Thus, we do not think that the wedding transforms from a ceremony to recreation simply because it occurred outside. We believe there has to be something more—an activeness, a physical exertion, or immersion in the physical elements of nature—that is essential to finding an activity 'associated with enjoying nature or the outdoors' as the statute intends. . . .
>
> To be a guest at a wedding is not an activity so similar to the sports and hobbies listed in the Recreational Use Statute that we think the legislature intended its inclusion. We therefore hold that the Sullivans were not engaging in recreation at the time of the accident.

*Id*. (internal citations omitted); *accord Univ. of Tex. at Arlington v. Williams*, No. 02-12-00425-CV, 2013 WL 1234878, at *3 (Tex. App.—Fort Worth March 28, 2013, pet. filed) (holding Recreational Use Statute did not apply to plaintiff who was injured while leaving high school stadium after watching a soccer game).

In the present case, the evidence established that Vidrine was injured while walking through the Waterway to get to the parking lot where she parked her car while attending a concert at the Pavilion, which is not on the park's premises. It is undisputed that she was using the Waterway as nothing more than a passageway to get to and from the Pavilion and its parking lot. Under these facts, we conclude the Recreational Use Statute does not apply.

11

## B. Duty

In the trial court, Woodlands argued that if the Recreational Use Statute did not apply, Vidrine was on the premises uninvited, as a trespasser, in which case Woodlands's only duty was not to injure her through willful or wanton conduct or gross negligence; therefore, summary judgment would still be proper. *See Tex. Utils. Elec. Co. v. Timmons*, 947 S.W.2d 191, 193 (Tex. 1997) ("The only duty a premises owner or occupier owes a trespasser is not to injure him willfully, wantonly, or through gross negligence."). On appeal, Woodlands argues that if Vidrine was not recreating on the property, "she exceeded any implied license for use" and became a trespasser. A trespasser is a person who enters the property of another without lawful authority, permission, or invitation. *Am. Indus. Life Ins. Co. v. Ruvalcaba*, 64 S.W.3d 126, 134 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). Woodlands presented summary judgment evidence establishing that the property is open to the public and they have knowledge that thousands of people walk on the property after each concert held at the Pavilion.[2] On these facts, we cannot conclude that Vidrine was a trespasser.

---

[2] In his affidavit, Daniel Kolkhorst, Vice President of Engineering & Construction of The Woodlands Development Company stated, "[t]housands of people walk on the property after each concert held at the Pavilion." Likewise, Bruce Tough, Chairman of The Woodlands Township, stated in his affidavit, "[i]n the many years that the Waterway has existed, thousands and thousands of people

Undisputed evidence established that Vidrine had to pass through the Waterway in order to get from the Pavilion to the Pavilion's parking lot where she was parked. Further, undisputed evidence established that passage must be made through the Waterway to get to all of the Pavilion's parking lots, except the "gold" lot. A person who is privileged to enter the premises of another by their express or implied permission is a licensee. *Lacy v. Rusk State Hosp.*, 31 S.W.3d 625, 630 (Tex. App.—Tyler 2000, no pet.) (citing *Peerenboom v. HSP Foods, Inc.*, 910 S.W.2d 156, 163 (Tex. App.—Waco 1995, no writ)). The undisputed evidence in the record establishes that Vidrine had implied permission to use the Waterway as a means of passage to and from the Pavilion. Therefore, we conclude that Vidrine is a licensee, not a trespasser.[3]

The duty owed to a licensee is to not injure the licensee by willful, wanton, or grossly negligent conduct, and in cases in which the licensor has actual knowledge of a dangerous condition unknown to the licensee, to use ordinary care to either warn the licensee of the condition or make the condition reasonably safe.

---

**every year** use the location complained of by [Vidrine ;]" "[w]hen concerts let out at the Pavilion, very large numbers of people, like [Vidrine], walk on the Waterway after dark."

[3] *See* 19 William V. Dorsaneo III, *Texas Litigation Guide* § 310.04[2][a] (2013) ("In addition to the duties owed to a trespasser, an owner or occupier owes certain other duties to licensees.").

*City of Dallas v. Reed*, 258 S.W.3d 620, 622 (Tex. 2008) (per curiam) (citing *State Dep't of Highways & Public Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992)).

## C. No Evidence of Breach

"Gross negligence requires that the landowner be subjectively aware of, and consciously indifferent to, an extreme risk of harm." *Shumake*, 199 S.W.3d at 288. In its no-evidence motion for summary judgment, Woodlands asserted that there was no evidence Woodlands was grossly negligent or otherwise acted willfully, wantonly, or consciously indifferent. The burden then shifted to Vidrine to provide more than a scintilla of probative evidence that Woodlands committed gross negligence or injured her by willful or wanton conduct. Tex. R. Civ. P. 166a(i).

The allegations in this case fail to demonstrate that the improperly lit steps presented an extreme risk of harm. Moreover, Vidrine generally pleaded a negligence claim. Vidrine did not specifically allege that Woodlands had actual knowledge of the alleged dangerous condition. But even construing Vidrine's pleadings broadly enough to state a claim for which she could recover, Vidrine failed to present any probative evidence that Woodlands had actual knowledge of the alleged dangerous condition, acted with gross negligence, or otherwise acted willfully or wantonly.

14

The record contains evidence that: (1) Woodlands provides lighting along the Waterway, "including on the very step [Vidrine] allegedly tripped on[,]" (2) "[t]here are area lights on poles near the top of the steps, and the bottom of the steps, in addition to lights built into the steps at each individual step[,]" and (3) though the location where Vidrine was injured is used by "thousands of people **every year**[,]" "no known prior accidents" have occurred at that location. Vidrine failed to present any evidence in response to Woodlands' motion to show that Woodlands was aware that there was an issue with the lighting on the stairs, or otherwise acted with conscious indifference to a problem with the lighting on the stairs. *See Reed*, 258 S.W.3d at 622; *see also Flynn*, 228 S.W.3d at 659-60. In our independent review of the record, we have found no evidence that Woodlands had actual knowledge of the alleged condition, acted with conscious indifference, or otherwise acted willfully or wantonly. We affirm the trial court's order granting summary judgment in favor of Woodlands.

## IV. SUMMARY JUDGMENT IN FAVOR OF THE PAVILION

The Pavilion also filed a traditional and no-evidence motion for summary judgment. The Pavilion argued it was not liable to Vidrine as a matter of law because it was not a possessor of the premises where the injury occurred as it neither owned, nor exercised control over the Waterway. In its no-evidence

15

motion, the Pavilion argued there was no evidence that the Pavilion owed Vidrine a legal duty, breached any duty allegedly owed, or that any alleged breach caused Vidrine damages. In response to the Pavilion's motion, Vidrine argued that the Pavilion owed her a duty because it exercised control over the area and the lighting in the area where she was injured.

To recover in negligence a plaintiff must prove (1) a legal duty owed by one party to another; (2) a breach of that duty; and (3) damages proximately caused by that breach. *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990). Duty is a threshold inquiry in a negligence case. *Id.* The existence of a duty is question of law for the court to decide based on the specific facts of the case. *Id.*

It is undisputed that Vidrine alleges she was injured by a condition of the stairs on which she fell. Her First Amended Original Petition can fairly be read as alleging only a premises liability claim. *See H.E. Butt Grocery Co. v. Warner*, 845 S.W.2d 258, 259 (Tex. 1992). The Pavilion owed Vidrine a duty as an invitee to keep the premises in a reasonably safe condition. *See Montes v. Indian Cliffs Ranch, Inc.*, 946 S.W.2d 103, 105 (Tex. App.—El Paso 1997, writ denied). To that end, the Pavilion had a duty to use ordinary care to protect Vidrine from unreasonable risk of harm created by a premises condition of which the Pavilion

16

had actual or constructive knowledge. *See Del Lago Partners, Inc. v. Smith*, 307 SW.3d 762, 767 (Tex. 2010); *see also Western Invs., Inc. v. Urena*, 162 S.W.3d 547, 550 (Tex. 2005). However, it is undisputed that Vidrine was not injured at the Pavilion, but was injured on the Waterway, owned by Woodlands, after she left the Pavilion.

The general rule is that there is no duty to protect persons from injury on adjacent property a person neither owns nor occupies. *Hirabayashi v. N. Main Bar-B-Q, Inc.*, 977 S.W.2d 704, 707 (Tex. App.—Fort Worth 1998, pet. denied). An owner or occupier is usually under no duty to someone who has ceased to be an invitee. *Portillo v. Housing Auth. of City of El Paso*, 652 S.W.2d 568, 569 (Tex. App.—El Paso 1983, no writ). An exception to the general rule exists when an owner or occupier "assumes actual control" over a portion of adjacent property. *Hirabayashi*, 977 S.W.2d at 707 (citing *Wal-Mart Stores, Inc. v. Alexander*, 868 S.W.2d 322, 324 (Tex. 1993)); *see also City of Denton v. Page*, 701 S.W.2d 831, 835 (Tex. 1986) (A defendant may be held liable for a dangerous condition on another's property if it "assum[ed] control over and responsibility for the premises" even if it did not own or physically occupy the premises.).

In *Alexander*, the plaintiff sued Wal-Mart for injuries she suffered after she tripped on a ramp leading from the parking lot to a sidewalk in front of Wal-Mart's

17

leased premises. *Alexander*, 868 S.W.2d at 323. Wal-Mart argued that it had no duty to the plaintiff because it was not the owner or occupier of the area where the ramp was located. *Id.* at 324. The Texas Supreme Court held that Wal-Mart had a duty of reasonable care to maintain the safety of the ramp after it built the ramp on its own initiative, and at its own expense. *Id.* "By so doing, it assumed actual control of the ramp area." *Id.* The Court cited the Restatement (Second) of Torts, which provides that a "possessor of land includes a person 'in occupation of land with intent to control it' regardless of whether the occupation is rightful." *Id.*(citing RESTATEMENT (SECOND) OF TORTS § 328E (1965)).

In support of its motion for summary judgment, the Pavilion presented an affidavit from Jeff Young, the Vice President of Operations for the Pavilion, in which he stated that the Pavilion "neither owned nor controlled the area" where Vidrine was injured. The Pavilion also presented the Kolkhorst affidavit, which stated that Woodlands provided lighting along the Waterway. In response to this evidence, Vidrine presented deposition testimony from Young, as well as her own affidavit.

Young testified that "when the [Pavilion] was first opened in 1990[]" and "prior to the opening of the waterway" around 2000, there were pathways cut through trees leading from the parking lots to the Pavilion. Young stated that the

Pavilion installed some lights along the pathways to get to the venue, and also placed staff members on the pathways "to help the guests navigate to the venue." However, Young testified that this practice stopped around 1999 or 2000 when the waterway was built.

Young testified the Pavilion's cleaning staff picks up trash along the pathways on the Waterway. In addition, Young stated generally that "[i]f there's lighting that [is] out in certain locations, we would either take care of it, try to do it ourselves, or notify the appropriate parties to try to get lights on[.]" Young explained that the Pavilion was "told to contact Brickman, [which] is the company that maintains the lights[,]" if they noticed an issue with the lights on the Waterway. Brickman would then subcontract out the job to an electrician who would "come out and actually physically fix the lights." According to Young, the Pavilion relies on Woodlands to properly maintain and light the Waterway, and no one has ever told the Pavilion it is responsible for maintaining the lights on the Waterway. Young stated that prior to the accident in this case,[4] the last time the

---

[4] Young also testified that the Pavilion may have replaced some lights on the Waterway in 2010 (well after Vidrine's 2008 accident). Young noted that "[t]here was a timer that was bad" on some pole lights "and some lights that were out that we had fixed after some events." According to Young, "that would be the last time." "Other than that," he stated he would imagine that any repairs to the lighting on the Waterway by the Pavilion would have been prior to 1999.

19

Pavilion would have replaced any lighting on the Waterway would probably have been prior to 1999.

Young stated that the Pavilion's employees are "staffed to be inside the venue and in the [Pavilion's] parking lots." But Young acknowledged that there may be staff members "watching the area[]" outside the Pavilion as people leave the facility "making sure that . . . everything is going fine, there's no fights, things like that, or altercations." Vidrine relied on (1) Young's deposition testimony in which he stated that after Vidrine's fall, a Pavilion employee came to her aid, and (2) the event medical treatment report, which indicated that Vidrine received medical attention at the Pavilion's medical facility. In her affidavit, Vidrine stated that the Pavilion employee who transported her back to her car after she received medical attention told her that the Pavilion usually had staff members along the pathways with flashlights to guide departing guests and he did not know why the Pavilion did not have staff stationed there when she fell.[5]

---

[5] This statement was not objected to in the trial court. An objection to the form of an affidavit must be made in writing. *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 677 (Tex. 1979); *see also* Tex. R. Civ. P. 166a(f). Thus, any argument that this statement is not proper summary judgment evidence has been waived. Tex. R. App. P. 33.1. Young testified that the Pavilion does not station employees along the pathways with flashlights during the blowout from concerts. However, in reviewing the trial court's grant of summary judgment, we must disregard conflicting evidence and accept as true all evidence favorable to the non-movant, unless reasonable jurors could not. *See Montgomery v. Kennedy*, 669

20

In the context of possession of real property giving rise to premises liability, we have previously defined "control" as "'the power or authority to manage, direct, superintend, restrict, regulate, govern, administer, or oversee.'" *Thornhill v. Ronnie's I-45 Truck Stop, Inc.*, 944 S.W.2d 780, 788 (Tex. App.—Beaumont 1997, writ dism'd by agr.). Therefore, "the primary test is whether the defendant is managing or directing the operations of the premises." *Id.* at 790 (citing *Gunn v. Harris Methodist Affiliated Hosp.*, 887 S.W.2d 248, 252 (Tex. App.—Fort Worth 1994, writ denied)). Young's testimony regarding the maintenance of the lights on the Waterway was uncontroverted. Viewing the evidence in the light most favorable to Vidrine, the evidence establishes, at most, that the Pavilion staff had access to the area where Vidrine fell and were free to address emergencies or other issues they observed on the Waterway. We conclude that Vidrine failed to produce more than a scintilla of probative evidence that the Pavilion "assumed actual control" of the stairs where Vidrine was injured. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003); *see also Hirabayashi*, 977 S.W.2d at 707; *Alexander*, 868 S.W.2d at 324; *see also Thornhill*, 944 S.W.2d at 788.

In addition to arguing that the Pavilion exercised control over the steps where Vidrine fell, Vidrine relies on another exception to the general rule that

S.W.2d 309, 311 (Tex. 1984); *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965).

there is no duty to prevent accidents on adjacent property a person neither owns nor occupies. This exception extends the duty to keep one's premises in reasonably safe condition to "obscured danger[s]" present near the entrances and exits of the premises.[6] *See Hirabayashi.*, 977 S.W.2d at 707 (citing *Renfro Drug Co. v. Lewis*, 149 Tex. 507, 235 S.W.2d 609, 615 (1950)). Vidrine argues that the inadequately lit steps on the Waterway presented an "obscured danger" that falls within this exception to the general rule. We disagree. We conclude the inadequately lit steps do not present the type of "obscured danger" to which this narrow exception to the

---

[6] Vidrine did not argue this exception to the no duty rule in response to the Pavilion's motion for summary judgment. However, Vidrine did argue the application of this exception to the trial court in her motion for new trial. We recognize that summary judgment cannot be affirmed or reversed on grounds not expressly set out in the motion or response. *See Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex. 1993); *see also* Tex. R. Civ. P. 166a(c). However, because the Pavilion also filed a no-evidence motion contending there was no evidence it owed Vidrine a duty, we may affirm the trial court's summary judgment on the grounds that no duty exists even if it requires legal analysis of a duty theory not expressly presented in the written response. *See Chrismon v. Brown*, 246 S.W.3d 102, 115 n.12 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing cases affirming summary judgment granting motion that asserted generally there was no evidence of duty, even though analysis of this ground on appeal required consideration of various legal principles involving duties); *compare Avery v. Alexander*, No. 09-08-00078-CV, 2008 WL 6740797, at *5 (Tex. App.—Beaumont Aug. 27, 2009, pet. denied) (concluding that trial court could not have granted summary judgment on an assumed duty exception raised by the plaintiffs in response to the defendant's traditional motion for summary judgment because a summary judgment cannot be granted on grounds not expressly set out in the movant's motion.).

general rule has been applied. *See Renfro Drug*, 235 S.W.2d at 615 (dangerous condition created by doorway that opened into drug store directly over a set of steps not level with garage floor); *cf. Hirabayashi*, 977 S.W.2d at 706-07 (holding busy roadway in front of restaurant did not present an obscured danger).

The Pavilion negated the element of duty as a matter of law. We overrule Vidrine's second issue. Having overruled all of Appellant's issues, we affirm the trial court's orders granting summary judgment in favor of the Center for the Performing Arts at the Woodlands d/b/a Cynthia Woods Mitchell Pavilion and the Woodlands Land Development Company, L.P.

AFFIRMED.

_____<br>
CHARLES KREGER<br>
Justice

Submitted on May 22, 2013
Opinion Delivered September 19, 2013

Before McKeithen, C.J., Gaultney and Kreger, JJ.

23