**CITY OF PLANO, Appellant**

v.

**Sandra HOMOKY, Appellee.**

**No. 05–08–01461–CV.**

Court of Appeals of Texas, Dallas.

Aug. 25, 2009.

Paul K. Pearce, Jr., Robert J. Davis, Timothy A. Dunn, Matthews, Carlton, Stein, Shiels, Pearce, Eden, Dunn & Knott, Dallas, TX, for Appellant.

Hardin R. Ramey, Dallas, TX, for Appellee.

Before Justices MOSELEY, O'NEILL, and MURPHY.

## OPINION

Opinion By Justice MURPHY.

Appellee Sandra Homoky sued the City of Plano under a theory of premises liability for injuries she sustained when she tripped and fell in a City-owned golf course clubhouse. The City appeals the denial of its plea to the jurisdiction, contending its governmental immunity was not waived under the Texas Recreational Use Statute or the Texas Tort Claims Act (TTCA). We reverse the trial court's order and dismiss Homoky's action for lack of subject matter jurisdiction.

## BACKGROUND

The City owns and operates the Pecan Hollow Golf Course, which is open to the

public for golfing and other activities. The City also owns and operates the clubhouse located on the golf course premises and a bar and grill restaurant located inside the clubhouse. After playing a round of golf, Homoky tripped and fell on a board while walking through the clubhouse. The board was part of an arrangement constructed by a City employee and consisted of five other boards placed end to end and topped with planters.

Homoky sued the City under the TTCA, asserting liability based on the City's performance of a proprietary function or, alternatively, based on a premises defect. Both parties presented evidence as part of the joint summary judgment and jurisdictional proceeding. The trial court denied the City's motion and plea in a single order, without specifying the basis for the denial. The City perfected its interlocutory appeal. TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon 2008).

██ On appeal, the City argues immunity because (1) operation of a golf course is a governmental function; (2) Homoky failed to allege waiver through gross negligence under the recreational use statute; and (3) alternatively, Homoky failed to plead waiver under the TTCA. In its reply brief, the City also argues no waiver under the TTCA because its questioned actions were discretionary. See id. § 101.056. Because our jurisdiction does not extend to issues not raised in the City's plea, we do not address the City's new argument under section 101.056. See City of Dallas v. First Trade Union Savs. Bank, 133 S.W.3d 680, 687 (Tex.App.-Dallas 2003, pet. denied).

## LEGAL STANDARDS

### Standard of Review

██ We review de novo a challenge to the trial court's subject matter jurisdiction.

Tex. Dep't of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex.2004); Perez v. City of Dallas, 180 S.W.3d 906, 909 (Tex. App.-Dallas 2005, no pet.). When a plea to the jurisdiction challenges the pleadings, we look to whether Homoky, as the plaintiff, has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case. Miranda, 133 S.W.3d at 226 (citing Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993)); City of Dallas v. Heard, 252 S.W.3d 98, 102 (Tex.App.-Dallas 2008, pet. denied). We liberally construe the plaintiff's pleadings in favor of jurisdiction, and we look to the plaintiff's intent, accepting as true the facts alleged. Miranda, 133 S.W.3d at 226, 228.

Where, as here, the City's plea also challenges the existence of jurisdictional facts, we must consider relevant evidence to resolve the jurisdictional issues. Id. at 227. This standard mirrors our summary judgment standard under Texas Rule of Civil Procedure 166a(c) and places the burden on the plaintiff to assert facts that affirmatively demonstrate the trial court's jurisdiction. Id. at 227–28. Once the plaintiff meets its burden, the governmental unit must contend the trial court lacks subject matter jurisdiction, supporting its contention with evidence. Id. at 228. The plaintiff is then required to show only that a disputed fact issue exists. Id.; Heard, 252 S.W.3d at 102. If the relevant evidence fails to raise a fact question or is undisputed on the jurisdictional issue, the trial court rules on the plea as a matter of law. Miranda, 133 S.W.3d at 228.

### Governmental Immunity and the Texas Tort Claims Act

██ Governmental immunity protects political subdivisions of the State, including

cities, counties, and school districts, from suit and liability. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex.2004); *Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 & n. 3 (Tex.2003); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 101.001(3)(B) (defining "governmental unit" to include cities). A city's immunity from suit depends on whether its actions are characterized as governmental or proprietary functions. *Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex.2006). Generally, governmental functions are those acts involving governmental matters done for the public's benefit. *Id.; see also* TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(a) (providing a nonexclusive list of acts classified as governmental for tort claims purposes).

▮▮▮ A city receives no protection from suit for torts committed in the performance of its proprietary functions. *Tooke*, 197 S.W.3d at 343. A city's proprietary functions are those conducted " 'in its private capacity, for the benefit only of those within its corporate limits, and not as an arm of the government.' " *Id.* (quoting *Dilley v. City of Houston*, 148 Tex. 191, 222 S.W.2d 992, 993 (1949)); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(b) (providing a nonexclusive list of acts classified as proprietary for tort claims purposes). If a city is negligent while engaged in the performance of a proprietary function, it is liable to the same extent as a private entity or individual. *Gates v. City of Dallas*, 704 S.W.2d 737, 739 (Tex.1986); *Martinez v. City of San Antonio*, 220 S.W.3d 10, 14 (Tex.App.-San Antonio 2006, no pet.).

### Waiver of Immunity

The Legislature created a limited waiver of immunity under the TTCA, permitting suits against governmental units for injuries caused in three circumstances: (1) by the operation or use of publicly-owned vehicles or equipment; (2) by a condition or use of tangible personal or real property; and (3) by premises defects. TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.025(a), 101.021(1)(A) & (2), 101.022. A plaintiff must plead sufficient facts to invoke a waiver of immunity under the TTCA. *County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex.2002).

The type of duty owed a plaintiff is part of the waiver analysis under the TTCA. TEX. CIV. PRAC. & REM.CODE ANN. §§ 101.021 & 101.022. In premises defect cases, the governmental unit owes "only the duty that a private person owes to a licensee on private property." *Id.* § 101.022(a). If the plaintiff pays to use the premises, the governmental unit's duty is that owed to an invitee. *Id.; Perez*, 180 S.W.3d at 910.

The Texas Recreational Use Statute provides a further limitation on the city's liability as a premises owner if the plaintiff engages in recreation on the premises. TEX. CIV. PRAC. & REM.CODE ANN. §§ 75.001–.004; *Stephen F. Austin State Univ. v. Flynn*, 228 S.W.3d 653, 659–60 (Tex.2007). If a plaintiff engages in recreation on city-owned premises, chapter 75 controls over the TTCA and limits the city's duty to that owed a trespasser. TEX. CIV. PRAC. & REM. CODE ANN. §§ 75.003(g) (chapter 75 controls over chapter 101 to the extent chapter 75 limits liability of a governmental unit under circumstances in which the governmental unit would be liable under chapter 101), 101.058 (same), 75.002(c)(2), (f) (duty owed to trespasser). Thus, when applicable, the recreational use statute operates to raise the plaintiff's burden of proof to show gross negligence, malicious intent, or bad faith. *Id.* § 75.002(d); *Flynn*, 228 S.W.3d at 659–60; *City of Bellmead v. Torres*, 89 S.W.3d 611, 615 (Tex. 2002).

## ANALYSIS

### Governmental versus Proprietary Functions

The City first argues the clubhouse is part of the City's ownership, operation, and maintenance of the golf course, which is a governmental function under the TTCA. The Pecan Hollow Golf Course is located in a city-owned park and includes the course, driving range, practice putting green, clubhouse, and parking lot. The City equates its operation of the golf course to that of a "park" or "recreational facility" under the TTCA and argues its immunity is not waived for the torts asserted by Homoky. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(a)(13), (23).

Homoky disputes the City's characterization. She depicts the City's actions as "interior design" and claims her injuries arose from the City's negligence in failing to use reasonable care in "decorating" the clubhouse, not in the operation of a municipal golf course.

We turn first to the question of whether the operation of a golf course constitutes a governmental or proprietary function under the TTCA. If the City's actions are listed as a governmental function in the TTCA, we have no discretion, regardless of the City's motives, to declare the actions as proprietary. *Id.* § 101.0215(c); *Tex. River Barges v. City of San Antonio*, 21 S.W.3d 347, 357 (Tex. App.-San Antonio 2000, pet. denied). Although "golf course" is not among those governmental functions listed in section 101.0215(a), the list does include such functions as "parks and zoos" and "recreational facilities, including but not limited to swimming pools, beaches, and marinas." TEX. CIV. PRAC. & REM.CODE ANN. § 101.0215(a)(13), (23). As interpreted by Texas courts and the Legislature, the terms "parks" and "recreation" have broad meanings. *See, e.g., Lewis v. City of Fort Worth*, 126 Tex. 458, 89 S.W.2d 975, 978 (1936). *See also* TEX. CIV. PRAC. & REM. CODE ANN. § 75.001(3)(L) (broadly defining "recreation" to include "any other activity associated with enjoying nature or the outdoors."). For example, a municipal park is "a place where the public generally may go for various kinds of recreation and amusement." *Lewis*, 89 S.W.2d at 978. Parks are also tracts of land " 'ornamented and improved as a place of resort for the public, for recreation and amusement of the public.' " *King v. City of Dallas*, 374 S.W.2d 707, 710 (Tex.Civ.App.-Dallas 1964, writ ref'd n.r.e.) (quoting *Furlong v. S. Park Comm'rs*, 320 Ill. 507, 151 N.E. 510, 511 (1926)); *see also Wiggins v. City of Fort Worth*, 299 S.W. 468, 470–71 (Tex.Civ. App.-Fort Worth 1927), *aff'd*, 5 S.W.2d 761 (Tex. Comm'n App.1928) (A "public park is said to be a tract of land, great or small, dedicated and maintained for the purposes of pleasure, exercise, amusement, or ornament; a place to which the public at large may resort to for recreation, air, and light."). A park may include various facilities used by the public generally for recreation, including "tennis, pitching horse shoes, croquet, baseball, basketball, *golf,* walking, horseback riding, picknicking [sic], and general outdoor exercise." *State v. Merrill*, 160 Tex. 537, 334 S.W.2d 432, 434 (1960) (emphasis added) (quoting *Golf View Realty Co. v. Sioux City*, 222 Iowa 433, 269 N.W. 451, 455 (1936)). Recreational parks are governmental in design because their purpose is to promote and benefit the "health and pleasure of the people at large." *Wiggins*, 299 S.W. at 471.

A municipal golf course offers the same purposes described, including activities "associated with enjoying nature or the outdoors." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 75.001(3)(L). Given the

broad interpretations afforded "parks" and "recreational facilities," and notwithstanding the lack of pleasure or amusement some associate with golf, we conclude operation of a golf course is encompassed within the governmental functions listed in the TTCA. *See City of San Antonio v. Polanco & Co., L.L.C.,* No. 04–07–00258–CV, 2007 WL 3171360, at *4 (Tex.App.-San Antonio Oct. 31, 2007, pet. denied) (mem. op.) (holding the operation of a golf course is a governmental function.); *cf. Mitchell v. City of Dallas,* 855 S.W.2d 741, 744 (Tex.App.-Dallas 1993), *aff'd,* 870 S.W.2d 21 (Tex.1994) (refusing to adopt a restrictive interpretation of § 101.0215(a) and concluding that the reclassification of parks as a governmental function includes all actions taken related to public parks).

■ Based on our conclusion the City's operation of a golf course is within its governmental function, we turn to Homoky's argument that operation of the clubhouse is a distinct proprietary function. The evidence shows the City owns and operates the golf course, the clubhouse located on the premises, and the restaurant located in the clubhouse. The clubhouse, with the restaurant operating within, is part of the services offered to golfers. The clubhouse also houses the pro shop where golfers pay their greens fees and rent golf carts. Golf patrons, as well as members of the public, are encouraged to use the clubhouse and purchase food and beverages from the restaurant. They also are allowed to wear their golf shoes in the clubhouse. Nothing in the evidence shows the golf course, clubhouse, and restaurant are anything but interrelated.

■ The dichotomy of governmental and proprietary functions proposed by Homoky ignores the parties' evidence and impermissibly dissects the City's operation. In considering whether the City was engaged in a governmental or proprietary function, a plaintiff may not "split various aspects of [a City's] operation into discrete functions and recharacterize certain of those functions as proprietary." *City of San Antonio v. Butler,* 131 S.W.3d 170, 178 (Tex.App.-San Antonio 2004, pet. denied); *see also Martinez,* 220 S.W.3d at 15. Based on the record before us, we therefore consider the golf course and its related premises as one function.[1]

### Waiver Under the Texas Tort Claims Act

Having determined the City's action here constitutes a governmental function, we next address whether governmental immunity is waived. The City argues the recreational use statute limits the City's liability because Homoky was engaged in recreation at the time of her accident. Because the statute would further limit the City's liability, we must first determine whether the recreational use statute applies to the facts of this case. *See Miranda,* 133 S.W.3d at 225 ("Section 101.058 of the Tort Claims Act further modifies a governmental unit's waiver of immunity from suit by imposing the limitations of liability articulated in the recreational use statute."); *State of Tex. Parks & Wildlife Dep't v. Morris,* 129 S.W.3d 804, 808 (Tex.

---

1. Homoky also argues the act of placing boards and planters on the floor is "utterly discretionary" and because such acts "could be performed by a private subcontractor," they are proprietary in nature. We note, however, that the City "has discretion to perform or not perform many activities in connection with its government functions. Nei-

ther that discretion nor the existence of a profit motive reclassifies one aspect of a government function into proprietary conduct." *Butler,* 131 S.W.3d at 178. The act of decorating the clubhouse is "logically characterized" as part of the operation of the golf course and is considered a governmental function.

App.-Corpus Christi 2004, no pet.) (analyzing application of the recreational use statute).

A plaintiff must be engaged in "recreation" at the time of the injury for the recreational use statute to apply. *Torres*, 89 S.W.3d at 613–14. The statute provides a nonexclusive list of activities defined to be "recreation," including "any other activity associated with enjoying nature or the outdoors." TEX. CIV. PRAC. & REM.CODE ANN. § 75.001(3)(L); *Kopplin v. City of Garland*, 869 S.W.2d 433, 441 (Tex. App.-Dallas 1993, writ denied) (the definitions in section 75.001(3) are not exclusive and do not exhaust the class of activities). In determining whether Homoky was engaged in recreation at the time of her injury, our inquiry is "what she was doing when she was injured." *Torres*, 89 S.W.3d at 614.

Homoky was at the Pecan Hollow Golf Course to play golf with members of her golf club. Homoky suggests that "playing golf" would be considered "recreation" under the statute, admitting "[h]ad she been hit in the head by another player's errant golf ball while she was out on the golf course," she "would have been injured while she was engaged in recreation." Homoky argues, however, that she was not "playing golf" at the time of her injury. Rather, she was indoors, "walking from the Grille restaurant, where she had been chatting with her friends, through the clubhouse toward the building exit." She maintains that simply walking across a room indoors cannot be fairly characterized as recreation under the statute.

We agree that "playing golf" would be considered "recreation" as an "activity associated with enjoying nature or the outdoors." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 75.001(3)(L). We disagree, however, with Homoky's characterization of her activity at the time of her injury as "simply walking across a room indoors." For the reasons that follow, we conclude Homoky's injury was related to the activity of playing golf.

The recreational use statute contemplates recreation not only when the person is actively engaged in recreation but also when the person is on the "premises" or journeying to and from the recreational area. *See, e.g., City of Lubbock v. Rule*, 68 S.W.3d 853, 858 (Tex.App.-Amarillo 2002, no pet.) (concluding that "journeying to a park to enjoy its facilities and playground equipment is akin to 'picnicking' . . . and within the category of an 'activity associated with enjoying nature or the outdoors.' "), *impliedly overruled in part on other grounds by State v. Shumake*, 199 S.W.3d 279 (Tex.2006); *Dubois v. Harris County*, 866 S.W.2d 787, 789–90 (Tex.App.-Houston [14th Dist.] 1993, no writ) (recognizing that a parking area or road would be a necessary and integral part of a recreational area). The statute also defines "premises" to include "buildings" and "structures" "attached to or located on the land." TEX. CIV. PRAC. & REM.CODE ANN. § 75.001(2). The clubhouse is clearly a structure, attached to the golf course and designed to be an integral part of the recreational area. *Dubois*, 866 S.W.2d at 789–90. We examine Homoky's activity in light of these definitions.

The evidence shows that after Homoky played 18 holes of golf, she took her clubs out to her car and returned the golf cart to the pro shop located in the clubhouse. After dropping off the golf cart, she walked up the stairs by way of an outside stairwell facing the golf course to the clubhouse where there was an open table displaying her league's scorebooks. She sat down with her golf partner, recorded her score in the book, and talked for a few minutes. When they finished, she got up and headed

to the exit and parking lot. As she was leaving the clubhouse, she tripped and sustained the injuries made the subject of her lawsuit. Nothing in the evidence shows a departure from Homoky's activity of playing golf. Thus, while Homoky may not have been swinging her club or walking outdoors in-between holes on the golf course, what she was doing when she was injured was by the above standards related to the activity of playing golf. The fact that Homoky's injury occurred inside the clubhouse rather than outside on the golf course does not render the recreational use statute inapplicable.[2]

On this record, we conclude Homoky was engaged in recreation at the time of her injury. Therefore, the recreational use statute applies to limit the liability of the City. To state a viable cause of action within the scope of section 101.021(2) of the TTCA when the injury involves real property used for recreational purposes, Homoky must allege facts affirmatively illustrating the injury arose from willful, wanton, or grossly negligent conduct of the City. *See id.* § 75.002(d); *Torres,* 89 S.W.3d at 615. Homoky's allegations fail to meet this pleading requirement.

 Gross negligence is "an act or omission involving subjective awareness of an extreme degree of risk, indicating conscious indifference to the rights, safety, or welfare of others." *Shumake,* 199 S.W.3d at 287 (citing *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 21 (Tex.1994)). "[W]hat separates ordinary negligence from gross negligence is the defendant's state of mind; in other words, the plaintiff must show that the defendant knew about the peril, but his acts or omissions demonstrate that he did not care." *Louisiana–Pacific Corp. v. Andrade,* 19 S.W.3d 245, 246–47 (Tex.

1999). This definition of gross negligence applies under the recreational use statute. *Miranda,* 133 S.W.3d at 225.

 Homoky claims in her amended petition, (1) a long piece of wood was negligently placed on the clubhouse floor across a walking pathway for decorative purposes; (2) the placement of that wood created an unreasonably dangerous condition and caused Homoky to trip and fall, sustaining serious injuries; (3) the City knew about or should have known about the dangerous condition of the premises; (4) the condition of the premises created an unreasonable risk of harm; (5) the City violated several state building codes, ordinances, and guidelines relating to means of ingress and egress in its placement of the wood on the floor; and (6) the City failed to exercise ordinary care in reducing or eliminating the dangerous condition. Construing Homoky's pleadings liberally, we conclude she does not allege any singular action by the City that satisfies the pleading requirements for gross negligence. Nor does she address gross negligence, other than to argue it is inapplicable.

The City contends the competent evidence supporting its plea to the jurisdiction establishes that it did not violate a duty under the recreational use statute. We agree. The undisputed evidence shows the City employee placing the boards and planters in the clubhouse did so to separate golfers who were walking in the front door from people in the lobby. He purchased blonde boards to be laid on dark carpet and placed six large potted plants on top of the boards. The boards and planters were clearly visible to persons using the lobby on the upper level of the clubhouse. He did not think the

---

2. The evidence shows that the clubhouse has multiple uses, including renting out the space for private parties and events. We express no opinion regarding reclassification of the facility should the evidence show a different activity.

boards and planters created a danger, and he considered the safety of persons using the lobby when making the decision for the arrangement. The evidence also shows that, with the exception of Homoky, there have been no complaints or accidents related to the arrangement. Homoky does not remember if she was watching where she was walking at the time she tripped and testified nothing obstructed her view of the boards and planters. Considering the undisputed evidence, Homoky has not raised a fact question as to gross negligence, and we therefore must rule on the City's plea to the jurisdiction as a matter of law. *Id.* at 227–28.

Because Homoky does not state a claim in terms of gross negligence or present evidence raising a fact issue sufficient to waive the City's immunity under the recreational use statute and the TTCA, Homoky's claim fails to affirmatively demonstrate the trial court's jurisdiction over her cause of action. *Id.* at 226. Accordingly, we sustain the City's sole issue.

## CONCLUSION

We conclude the trial court erred in denying the City of Plano's plea to the jurisdiction. Based on the record before us, the order of the trial court is reversed and Sandra Homoky's action is dismissed for lack of subject matter jurisdiction.