

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00229-CV

THE CITY OF DALHART, TEXAS, APPELLANT

V.

CAROL LATHEM, AS NEXT FRIEND OF E. L., A MINOR, APPELLEE

On Appeal from the 69th District Court
Dallam County, Texas
Trial Court No. 11400, Honorable Roland D. Saul, Presiding

August 31, 2015

OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Appellee Carol Lathem, as next friend of her minor daughter E.L., filed a negligence and premises liability suit against appellant, the City of Dalhart, after E.L. was injured by falling boards at a public City pool.  When the trial court denied its plea to the jurisdiction, the City filed this interlocutory appeal.  We will reverse the order of the trial court and dismiss the cause for lack of subject matter jurisdiction.

Background

In June 2011, eight-year-old E.L. paid to swim at the City pool. While she was swimming, the lifeguards announced a fifteen-minute break and required all swimmers to leave the pool. E.L. got out of the pool and sat with other swimmers at a picnic table underneath a covered area along the front of the concession/locker room building inside the pool facility. A set of lockers sat against the wall of the building, adjacent the picnic table. The lockers were made of a plastic or composite material and were purchased, unassembled, in 2005. When City workers assembled the lockers, there were parts left over, four six-foot-long boards made of the same composite material. Unsure what to do with them, they left them on top of the lockers. Two witnesses described them as "fairly heavy."[1] E.L. sat on her knees at the picnic table with her back to the lockers. The stacked boards fell from the lockers, striking the back of E.L.'s lower legs. She sustained injuries to her legs and ankles.

Lathem sued the City to recover for her daughter's injuries, alleging causes of action for personal injury caused by a condition or use of tangible personal property, injury by premises defect, and, in the alternative, injury while engaged in recreation.

The City filed a plea to the jurisdiction and motion to dismiss, arguing Lathem's pleadings and the evidence did not demonstrate a waiver of the City's sovereign immunity for her claims under the Texas tort claims act and the Texas recreational use statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001-.109 (West 2014) (tort

---

[1] These descriptions came from Cassidy Lenz and Greg Duggan. Another witness, Gilbert Ramirez, when asked how much each board weighed, responded, "Shoo. I don't know. Fifteen, twenty pounds, maybe."

claims act); TEX. CIV. PRAC. & REM. CODE ANN. §§ 75.001-.006 (West 2015) (recreational use statute). Lathem responded. Both sides presented evidence relevant to the trial court's jurisdiction. The trial court denied the City's plea and motion by written order, and this interlocutory appeal followed. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8) (West 2014).

Analysis

The City raises four issues. We find it necessary to address three. We first address the City's contentions the trial court should have dismissed Lathem's premises liability claim because the recreational use statute applies to E.L.'s presence at the City pool and the evidence does not show gross negligence. We then consider its argument no evidence showed E.L.'s injuries were caused by the City's use of tangible personal property and Lathem's claim alleging otherwise should have been dismissed.

A challenge to a trial court's subject matter jurisdiction may be asserted in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 225-26 (Tex. 2004); *Bland Ind. Sch. Dist. v. Blue,* 34 S.W.3d 547, 554 (Tex. 2000). Whether a court has subject matter jurisdiction is a question of law that we review *de novo. State v. Holland,* 221 S.W.3d 639, 642 (Tex. 2007); *Miranda,* 133 S.W.3d at 226. When the pleadings are challenged, we consider the allegations in favor of the plaintiff to determine if the plaintiff alleged facts affirmatively demonstrating the jurisdiction of the trial court to hear the case. *Miranda,* 133 S.W.3d at 226. To the extent relevant to the issue of jurisdiction, we also consider any evidence received by the trial court. *Blue,* 34 S.W.3d at 555; *Texas Tech Univ. v Ward,* 280 S.W.3d 345, 348 (Tex. App.—Amarillo

3

2008, pet. denied). Unless a jurisdictional fact is challenged and conclusively negated, we must accept it as true when determining subject-matter jurisdiction. *See City of El Paso v. Heinrich,* 284 S.W.3d 366, 378 (Tex. 2009) (court reviewing plea to jurisdiction takes as true all evidence favorable to non-movant, indulging every reasonable inference and resolving any doubts in its favor).

Sovereign immunity deprives a Texas trial court of subject matter jurisdiction for suits against the state and other governmental units, including municipalities, unless the state consents to suit. *Tex. Dep't of Transp. v. Jones,* 8 S.W.3d 636, 638 (Tex. 1999); TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a) (West 2013). The tort claims act provides a limited waiver of sovereign immunity. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001-.109 (West 2014). The tort claims act waives sovereign immunity for injuries arising out of (1) the use of publicly-owned automobiles; (2) the condition or use of tangible personal property; and (3) premises defects. *County of Cameron v. Brown*, 80 S.W.3d 549, 554 (Tex. 2002); *see* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021.

The tort claims act permits tort claims against a municipality arising from its governmental functions. TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a). Operation of a swimming pool is a governmental function of a municipality. *Id.* § 101.0215(a)(23) ("recreational facilities, including but not limited to swimming pools, beaches, and marinas" are governmental functions).

Premises Defect

The tort claims act provides that in premises defect cases, the state owes to the claimant the duty of care that a private person owes to a licensee on private property

4

unless the claimant has paid for the use of the premises. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(a); *State v. Shumake,* 199 S.W.3d 279, 283 (Tex. 2006). If a claimant has paid for use of the premises, as E.L. did here, the state owes the claimant the duty that a private person owes an invitee on private property. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.022(a); *Univ. of Tex. Med. Branch at Galveston v. Davidson,* 882 S.W.2d 83, 85 (Tex. App.—Houston [14th Dist.] 1994, no writ) ("Although the [tort claims act] does not specifically state, case law interpreting the [tort claims act] has held that if the claimant pays for use of the premises, then § 101.022(a) imposes upon the State the same duty of care a private landowner owes an invitee.").

But if the recreational use statute applies to E.L.'s presence on the pool's premises, the City owed her only the duty not to injure her through willful, wanton or grossly negligent conduct. TEX. CIV. PRAC. & REM. CODE ANN. § 75.002(f) ("if a person enters premises owned, operated, or maintained by a governmental unit and engages in recreation on those premises, the governmental unit does not owe to the person a greater degree of care than is owed to a trespasser on the premises"); *Miranda,* 133 S.W.3d at 225 (premises owner owes a trespasser only a duty "not to injure that person willfully, wantonly, or through gross negligence"); *City of Bellmead v. Torres*, 89 S.W.3d 611, 613 (Tex. 2002) (same). The combined effect of the tort claims act and the recreational use statute is that the governmental unit's sovereign immunity is waived for a premises defect only if the governmental unit is grossly negligent. *Miranda*, 133 S.W.3d at 225.[2] And to determine whether the recreational use statute applies, we

---

[2] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.058 ("To the extent that [the recreational use statute] limits the liability of a governmental unit under circumstances in which the governmental unit

5

focus on what E.L. was doing when she was injured. *City of Bellmead*, 89 S.W.3d at 614; *City of Corpus Christi v. Ferguson*, No. 13-12-00679-CV, 2014 Tex. App. LEXIS 1299, at *9 (Tex. App.—Corpus Christi Feb. 6, 2014, no pet.) (mem. op.).

The recreational use statute defines "recreation" to include swimming. TEX. CIV. PRAC. & REM. CODE ANN. § 75.001(3). In response to the City's assertion in its plea to the jurisdiction, Lathem argued to the trial court that at the time of her daughter's injury, E.L. was not swimming but merely was sitting at the table at the instructions of the lifeguard. She contends this is not "recreation" within the meaning of the statute.

A similar argument was made in *City of Plano v. Homoky,* 294 S.W.3d 809 (Tex. App.—Dallas 2009, no pet.), in which the plaintiff Homoky was injured in the clubhouse after she completed her round of golf, returned her clubs to her car, returned the golf cart to the pro shop, entered the clubhouse, recorded her score in her league's books, and sat and talked for a few minutes with her golf partner. Homoky tripped and was injured as she was leaving the clubhouse. *Id*. at 816-17. Homoky conceded, and the court agreed, that playing golf would be considered recreation under the statute. She contended, however, that when injured she was not playing golf but merely walking across a room indoors. *Id*. at 816. The court disagreed, noting "[w]hile Homoky may not have been swinging her club or walking outdoors in-between holes on the golf course, what she was doing when she was injured [while walking through the club house] was . . . related to the activity of playing golf." *Id*. at 817.

_____
would be liable under [the tort claims act], [the recreational use statute] controls."); TEX. CIV. PRAC. & REM. CODE ANN. § 75.003(g) (companion statute containing same directive).

6

Similarly, this court found that a suit in which parents alleged their child was burned by sun-heated playground equipment asserted a claim subject to the recreational use statute. *City of Lubbock v. Rule,* 68 S.W.3d 853, 858 (Tex. App.—Amarillo 2002, no pet.), *impliedly overruled in part on other grounds by Shumake,* 199 S.W.3d 270. We found the family's visit to the city park was "akin to 'picknicking'" and thus was included within the category of an activity associated with enjoying nature or the outdoors. *Id.*; *see* TEX. CIV. PRAC. & REM. CODE ANN. § 75.001(3)(L) (including such activity within the definition of recreation).

In *Ferguson*, 2014 Tex. App. LEXIS 1299, at *14, the plaintiff spent the night on her family's sailboat, planning to participate in a boat parade the next day. In the morning, she walked to the marina's bathroom facility to take a shower. She slipped and fell on the pier as she walked back to the sailboat from the bathroom. *Id.* at *2. Rejecting the plaintiff's contention that she was not engaged in recreation when she fell but merely was walking back to her boat, the court held her use of the marina's shower facilities was "an inseparable part" of her activity of camping overnight in the boat, and a part of her "broader boating-camping activities." *Id.* at *14.

In the Texas Supreme Court's recent analysis of the recreational use statute in *Univ. of Tex. at Arlington v. Williams,* 459 S.W.3d 48 (Tex. 2015), two members of the court expressed a view that might call for a more narrow or precise evaluation of what E.L. was doing at the time of her injuries. *Id.* at 57-59 (Guzman, J., concurring).[3] Even under those justices' analysis, however, we would conclude that E.L. was engaged in

---

[3] Justice Willett joined Justice Guzman's concurring opinion. *Id.* We recognize the opinions in *Williams* focus on the application of subpart (L) of section 75.001(3), but we find the justices' discussion instructive in our consideration of the breadth to be given an activity like swimming.

an activity closely related to the recreational activity of swimming as she sat at the picnic table during the mandatory swim break.

We thus find E.L. was engaged in the recreational activity of swimming when she was injured even though she was not in the water at the time. E.L. was swimming before the mandatory swim break, left the water only at the lifeguard's instruction and was injured during the break while she sat with other swimmers at a picnic table on pool premises. As noted, the statute names swimming among recreational activities, and defines "premises" to include "equipment attached to or located on the land." TEX. CIV. PRAC. & REM. CODE ANN. § 75.001(2); *see City of Bellmead,* 89 S.W.3d at 615 (noting statute "specifically contemplates recreation related to structures on the property"); *Homoky*, 294 S.W.3d at 816 (the recreational use statute contemplates recreation not only when the person is actively engaged in recreation but also when the person is on the "premises" or journeying to and from the recreational area). The City owed E.L. the duty not to injure her through gross negligence. *Ferguson,* 2014 Tex. App. LEXIS 1299, at *16.

We turn to the question whether there is evidence to support a conclusion the City was grossly negligent by leaving the boards on top of the lockers. Gross negligence involves two components: (1) viewed objectively from the actor's standpoint, the act or omission complained of must involve an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and (2) the actor must have actual, subjective awareness of the risk involved, but nevertheless proceed in conscious indifference to the rights, safety, or welfare of others. *Miranda,* 133 S.W.3d at 225 (*citing Louisiana-Pacific Corp. v. Andrade,* 19 S.W.3d 245, 246 (Tex. 1999)).

8

With respect to the test's first component, the Texas Supreme Court has explained that grossly negligent conduct must impose an objectively higher risk than ordinary negligence. *Wal-Mart Stores v. Alexander*, 868 S.W.2d 322, 326 (Tex. 1993) (*citing Williams v. Steves Indus., Inc.*, 699 S.W.2d 570, 573 (Tex. 1985)). Referring to the "extreme risk" component of gross negligence, the court in *Alexander* quoted Prosser and Keeton's reference to "a known or obvious risk that was so great as to make it highly probable that harm would follow . . . ." *Alexander*, 868 S.W.2d at 326 (*quoting* Prosser and Keeton, Law of Torts, § 34, at 213 (5th ed. 1984)).

The court also has noted that every negligence or gross negligence case involves an allegation of injury, and that "[d]etermining whether an act or omission involves extreme risk or peril requires an examination of the events and circumstances from the viewpoint of the defendant at the time the events occurred, without viewing the matter in hindsight." *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 23 (Tex. 1994).

So far as this record shows, the boards had remained atop the lockers, without falling, since they were left there six years before. In *Alexander*, the evidence showed Wal-Mart's store management knew of the existence of a ridge at the base of a concrete ramp before Mrs. Alexander tripped on the ridge and fell, breaking her hip. 868 S.W.2d at 323-24. The store's sales manager had stumbled over the ridge two months before, and he considered it a "serious safety hazard." He told the store's general manager about the problem, but the general manager did not consider it a safety hazard before Mrs. Alexander fell "because no one had ever fallen." *Id.* at 324. The court held the record contained no evidence that Wal-Mart's conduct created an extreme risk of harm. It noted the store had averaged 50,000 patrons per month in the

9

three months it had been open before Mrs. Alexander fell, that no one had tripped and fallen over the ridge before her, and that only one person, the sales manager, had as much as stumbled there. *Id.* at 327. We likewise find no evidence the City's conduct involved the extreme degree of risk required to demonstrate gross negligence. *Miranda,* 133 S.W.3d at 225. To raise a fact issue, Lathem points to the deposition testimony of the lifeguard Cassidy Lenz. She said she noticed the boards on top when she cleaned out the lockers every day but "never thought twice about it." Asked if it occurred to her that the boards would pose a safety risk, she stated, "I think if I was a manager, I probably would've realized it's not very safe. But since that wasn't my job, I didn't really consider it." There is a difference between "not very safe" and a risk so great as to make it highly probable that harm would follow. *See Alexander*, 868 S.W.2d at 326. Moreover, Lenz's testimony cannot be seen as having any greater tendency to show an extreme degree of risk than that of the sales manager in *Alexander*, who regarded the ridge in the concrete as a "serious safety hazard." 868 S.W.2d at 324.

Because there is no evidence of the existence of an extreme degree of risk the boards would fall and injure someone, it follows the City could not have been subjectively aware of such a risk but ignored it. *See Alexander*, 868 S.W.2d at 327 ("[h]aving concluded that there is no evidence on this record of an extreme degree of risk, we need not and indeed cannot consider the second prong" of the gross negligence analysis).

The evidence contains no probative explanation why the boards fell when they did. There is no testimony from a witness who saw them fall. If there was in existence at the time the boards fell on E.L. a circumstance that would increase the risk they

10

would fall, this record contains no evidence of it, and certainly contains no evidence the City was subjectively aware of such a circumstance. *See Miranda,* 133 S.W.3d at 232 ("with regard to the subjective component of gross negligence, it is the defendant's state of mind - whether the defendant knew about a peril but nevertheless acted in a way that demonstrated that he did not care about the consequences - that separates ordinary negligence from gross negligence) (*citing Louisiana-Pacific*, 19 S.W.3d at 246-47).

Because we find the recreational use statute applies and the jurisdictional evidence does not raise a fact issue regarding the City's gross negligence, we sustain the City's first and second issues.

Use of Tangible Property

We turn next to Lathem's claim the City "used" tangible personal property that caused injury to E.L. A governmental unit in the state is liable for, among other things, personal injury proximately caused by use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law. TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2). To state a claim that falls within the limited waiver of immunity under the Act, Latham must allege that the use of tangible personal property proximately caused E.L.'s injury. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021(2).

"Use" has been defined as "to put or to bring into action or service; to employ for or apply to a given purpose." *Tex. Dep't of Crim. Justice v. Miller*, 51 S.W.3d 583, 588 (Tex. 2001). "Use," by contrast, does not mean a failure to use or "non-use" of personal property. *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 585 (Tex. 1996). Our courts

11

have observed that "use" of personal property under section 101.021(2) cannot mean every form of negligence committed by a governmental unit that happens to involve personal property in some way because such an application would "expand what the legislature plainly intended as a limited waiver of immunity into effectively a general waiver." *Tex. Sch. for the Blind & Visually Impaired v. Dugosh,* No. 03-07-00681-CV, 2010 Tex. App. LEXIS 2207, at *34 (Tex. App.—Austin Mar. 26, 2010, pet. denied) (mem. op.) (*citing Clark*, 923 S.W.2d at 585); *see Dallas Cnty. Mental Health & Mental Retardation v. Bossley,* 968 S.W.2d 339, 343 (Tex. 1998) (also referring to tort claims act's "basic purpose of waiving immunity only to a limited degree").

It is undisputed the City placed the boards on top of the lockers in 2005 and it is undisputed they fell on E.L. in 2011. But Lathem did not present evidence showing E.L. suffered injury from the City's use of the four boards as the term "use" in section 101.021(2) has been applied. The evidence shows merely that the boards were unpacked with the rest of the lockers' assembly, were not used in the assembly, and were left lying on the lockers. Nothing shows the City put them into action or service, or that they were employed for or applied to a given purpose. The boards merely were left unused.

In *Retzlaff v. Tex. Dep't of Criminal Justice*, 135 S.W.3d 731 (Tex. App.—Houston [1st Dist.] 2003, no pet.), the inmate plaintiff was injured when, during a ball game, he fell into a section of the prison's perimeter fence where the Department had installed razor wire. The court found that the Department put the wire into service for a given purpose by placing it along the perimeter fence to deter escapes, and held the plaintiff had plead a claim for injury caused by a use of tangible personal property. *Id.* at

741.  Here, by contrast, the boards left stacked on the lockers were not placed into service for any purpose.  Taking as true all evidence favorable to Lathem, it does not support a conclusion E.L.'s injuries were proximately caused by the City's use of tangible personal property.[4] We resolve the City's third issue in its favor.

## Conclusion

We sustain the City's first and second issues, finding the recreational use statute applies to Lathem's premises defect claim and Lathem failed to raise a fact issue with regard to the City's gross negligence. We likewise sustain the City's third issue on appeal contending Lathem has failed to raise a fact question concerning her claim that E.L.'s injuries were proximately caused by the City's use of tangible personal property. Accordingly, the trial court lacked subject matter jurisdiction over the action. It is unnecessary for us to address the City's fourth issue.  We reverse the order of the trial court and render judgment dismissing the cause for lack of subject matter jurisdiction.


James T. Campbell
Justice

---

[4] *Miranda* states that plaintiffs may not "re-cast" a premises defect claim by alleging the defendant's failure to act to reduce risks or failure to warn of risks also constitutes a negligent use of tangible property.  133 S.W.3d at 233. The "re-casting" prohibition sometimes has been applied to cases similar to this one.  *See, e.g.*, *Dallas County Hosp. Dist. v. Constantino,* No. 05-13-01084, 2014 Tex. App. LEXIS 8703 (Tex. App.—Dallas Aug. 7, 2014, no pet.) (mem. op.) (hospital room visitor injured by falling television).  The parties do not address the potential applicability of such cases.