**CONCUR and Opinion Filed June 29, 2021**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

**No. 05-19-01431-CV**
_____

**TOWN OF HIGHLAND PARK, Appellant**

**V.**

**TIFFANY RENEE MCCULLERS, ET AL., Appellee**

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-18-08709**

## CONCURRING OPINION

Before Chief Justice Burns, Justice Pedersen, III, and Justice Goldstein
Opinion by Justice Goldstein

The facts of this case are heart-wrenching, but the legal issues discrete. For us to affirm the order of the trial court, we would have to overrule legislative enactments and Texas Supreme Court precedent, neither of which we are authorized to do. Because the law requires us to hold that the Town is immune under the facts as presented, I concur with the Majority Opinion. I write separately to address the governmental–proprietary function dichotomy as it applies to Appellees' first negligence claim.

# I. BACKGROUND

In their live pleading, Appellees asserted three causes of action against the Town: two counts of negligence and one count of premises liability. Their first count of negligence pertains to the Town's policy of coordinating "private security guard services" (the "coordination claim"). Appellees pled, and argue before this Court, that such coordination was a proprietary function, thus exempting their first negligence claim from the TTCA. For its part, the Town characterizes its policy as "coordination of off-duty law enforcement services." The Town argues that this coordination falls under its governmental function of police protection and control, which is expressly listed as a governmental function in the TTCA.

The question presented here is whether the coordination of off-duty officers falls under the TTCA's enumerated function of "police . . . protection and control."[1]

---

[1] We may not need to reach this question. Appellees' coordination claim alleges that the Town was negligent "by failing to warn [Officer McCullers] of the unreasonable risk of flash flooding at the Property, and by failing to provide any post orders and/or instructions to [Officer McCullers] to seek shelter during rainfall events." On the face of these pleadings, it is unclear whether Officer McCullers's death "arose from" the Town's coordination of off-duty personnel, as required by the TTCA. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a) ("A municipality is liable under this chapter for damages *arising from* its governmental functions . . . ." (emphasis added)). The supreme court has held that in the context of the TTCA, the phrase "arises from" requires a showing that the government action was a cause in fact of the plaintiff's injury. *See Ryder Integrated Logistics, Inc. v. Fayette Cty.*, 453 S.W.3d 922, 928 (Tex. 2015). Thus, for example, when a condition or use of property "merely furnishes a circumstance 'that makes the injury possible,' the condition or use is not a substantial factor in causing the injury" and therefore not a cause in fact of same. *See City of Dallas v. Sanchez*, 494 S.W.3d 722, 726 (Tex. 2016).

Here, the evidence appears to show that the Town's coordination of off-duty officers did not cause, but rather merely supplied one of the conditions—the physical presence of Officer McCullers on private property that flooded—which resulted in his tragic death. Accordingly, the governmental–proprietary dichotomy would not apply to the coordination claim.

Because this issue implicates jurisdiction, it may be raised at any time, and we can request that the parties supplement their briefs to address it. *See Temple v. City of Houston*, 189 S.W.3d 816, 819 (Tex. App.—Houston [1st Dist.] 2006, no pet.). However, we need not reach the "arises from" issue here, because

If we resolve this issue in Appellees' favor, the coordination claim would survive even if Appellees' other claims were subject to dismissal. That is because a Texas municipality enjoys no immunity for claims arising out of its proprietary functions. Conversely, if we resolve this issue in the Town's favor, the coordination claim is subject to the same immunity analysis as Appellees' other claims.[2]

In our de novo review, we must address a plea to the jurisdiction on a claim-by-claim basis when necessary to resolve discrete jurisdictional issues. *See Thomas v. Long*, 207 S.W.3d 334, 339 (Tex. 2006) (explaining that a trial court may appropriately dismiss the claims over which it lacks subject matter jurisdiction, while retaining the claims over which it has jurisdiction). Because the governmental–proprietary dichotomy determines how we must treat Appellees' coordination claim, I address it separately.

---

the briefs submitted by the parties allow us to adequately dispose of the parties' issues without supplemental briefing.

[2] I concur with the Majority that Appellees failed to provide timely written formal notice of their claim in accordance with Section 101.101(a) of the Texas Tort Claims Act ("TTCA"), and that the Town had no actual notice through actual, subjective awareness of its alleged fault producing or contributing to the death. I agree that this Court is neither in a position to disagree with the supreme court's holding in *Cathey v. Booth* and its progeny, nor tread where the Texas Legislature has not gone in over two decades. *See Cathey v. Booth*, 900 S.W.2d 339, 340 (Tex. 1995); *see also Worsdale v. City of Killeen*, 578 S.W.3d 57 (Tex. 2019) (declining to overturn *Cathey*); *City of San Antonio v. Tenorio*, 543 S.W.3d 772 (Tex. 2018) (same); *City of Dallas v. Carbajal*, 324 S.W.3d 537 (Tex. 2010) (citing *Cathey* for the proposition that Section 101.101(c) requires a city to have "subjective awareness of its fault" in order to avoid the notice requirement of Section 101.101(a)).

Without formal written or actual notice, the jurisdictional pre-requisites to suit are not satisfied to establish the limited waiver of governmental immunity under the TTCA, thus precluding all of Appellees' tort claims against the Town. To avoid the harsh consequences of lack of notice, Appellees argue that the Town's coordination of off-duty police officers providing security services falls outside of the TTCA because negligence in coordination of private security services is a proprietary function.

## II. DISCUSSION

"Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions from lawsuits and liability from money damages." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008). Under the common-law doctrine of sovereign immunity, the State cannot be sued without its consent. *City of Houston v. Williams*, 353 S.W.3d 128, 134 (Tex. 2011) (citing *Tooke v. City of Mexia*, 197 S.W.3d 325, 331 (Tex. 2006)). Like sovereign immunity, governmental immunity affords similar protection to subdivisions of the State, including counties, cities, and school districts. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *LTTS Charter Sch., Inc. v. Palasota*, 362 S.W.3d 202, 208 (Tex. App.—Dallas 2012, no pet.); *see also* TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3)(B) (defining "governmental unit" to include cities).

Governmental immunity has two components: (1) immunity from liability, which bars enforcement of a judgment against a governmental entity; and (2) immunity from suit, which bars suit against the entity altogether. *Tooke*, 197 S.W.3d at 332. Immunity from suit deprives the court of subject-matter jurisdiction and is properly raised in a plea to the jurisdiction, whereas immunity from liability is asserted as an affirmative defense. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 224 (Tex. 2004); *see also Palasota*, 362 S.W.3d at 208. "Immunity from suit bars a suit against the State unless the Legislature expressly consents to the suit." *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 853 (Tex.

2002). "If the Legislature has not expressly waived immunity from suit, the State retains such immunity even if its liability is not disputed." *Id.* "Immunity from liability protects the State from money judgments even if the Legislature has expressly given consent to sue." *Id.*

## A. Governmental–Proprietary Dichotomy

The Town's fourth issue on appeal relates to Appellees' coordination claim. The Town contends that its coordination of off-duty law enforcement services is a governmental function under the TTCA. Appellees counter that such coordination is proprietary and thus exempt from immunity protections afforded under the TTCA.

A city's immunity from tort-based suits depends on whether its actions are characterized as governmental or proprietary functions. *Tooke*, 197 S.W.3d at 343. At common law, this determination was made by the courts. *See id.* In 1987, however, the People approved a constitutional amendment "to allow the Legislature to classify the functions of a municipality that are to be considered governmental and those that are proprietary." *Williams v. City of Midland*, 932 S.W.2d 679, 682–83 (Tex. App.—El Paso 1996, no writ) (citing TEX. CONST. art. XI, § 13). Under that authority, the Legislature amended the TTCA to classify a number of municipal functions as governmental. *See id.* As amended, the TTCA initially enumerated "thirty-three[3] municipal functions defined as governmental and included not only

---

[3] The number of enumerated governmental functions is now thirty-six. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a).

long held governmental functions such as police and fire protection, and sanitary and storm sewers, but such traditional proprietary functions as the operations of cemeteries, waterworks, and street construction and design." *See id.* at 683 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)).

Section 101.0215(a) of the TTCA defines governmental functions as those "that are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public . . . ." TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a). Subsection (a) further provides a non-exhaustive list of thirty-six individual functions that it deems governmental. In Subsection (b), the TTCA defines proprietary functions as those that a municipality "may, in its discretion, perform in the interest of the inhabitants of the municipality . . . ." *See id.* § 101.0215(b).

Subsection (c) further provides: "The proprietary functions of a municipality do not include those governmental activities listed under Subsection (a)." *Id.* § 101.0215(c). In other words, Subsection (c) operates as a savings clause—if the function appears on the enumerated list under Subsection (a), it is classified as governmental irrespective of whether the city is performing the function in the interest of the general public or its own inhabitants, and irrespective of whether the function is enjoined on the city by law or one it may perform in its discretion. "If the City's actions are listed as a governmental function in the TTCA, we have no

discretion, regardless of the City's motives, to declare the actions as proprietary." *City of Plano v. Homoky*, 294 S.W.3d 809, 814 (Tex. App.—Dallas 2009, no pet.).

Thus, in determining whether a city's actions are proprietary or governmental, we must first consider whether the action falls within one of the enumerated functions in Subsection (a).[4] In making that decision, we do not "split various aspects of a city's operation into discrete functions and recharacterize certain of those functions as proprietary." *Id.* at 815. In *Homoky*, for example, we held that the operation of a municipal golf course falls within the Act's enumerated governmental functions of "parks and zoos" or "recreational facilities." *See id.* at 814–15 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a)(13), (23)). In so holding, we rejected Homoky's argument that, even if the operation of the golf course is governmental, the operation of the clubhouse, where his injuries occurred, is proprietary. *See id.* at 815. We explained that "[n]othing in the evidence shows the golf course, clubhouse, and restaurant are anything but interrelated." *Id.* As such, we held, "[t]he dichotomy of governmental and proprietary functions proposed by Homoky ignores the parties' evidence and impermissibly dissects the City's operation." *Id.*

---

[4] If a governmental function does not appear on either the list of governmental functions in Subsection (a) or the list of proprietary functions under Subsection (b), we must determine whether the function is governmental or proprietary pursuant to the TTCA's definitions. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a), (b); *see also City of Carrollton v. Weir Bros. Contracting, LLC*, No. 05-20-00714-CV, 2021 WL 1084554, at *3 (Tex. App.—Dallas Mar. 22, 2021, no pet. h.) (mem. op.) ("If a function is not designated as either governmental or proprietary, we apply the section's general definitions to determine the nature of the activity.").

**B.     Application of Law to Facts**

The relevant facts of this case are not disputed. The legal implication of those facts under the TTCA is the crux of this dispute. Although the parties focus their arguments on Officer McCullers's status as "a private security guard" or a "licensed peace officer," that distinction misses the mark. Our task is to determine whether the *Town* was engaged in proprietary or governmental functions. Thus, our focus should be on the Town's off-duty officer employment policy and the singular, challenged activity thereunder—the coordination of private security services provided by off-duty officers. Officer McCullers's status is relevant only to the extent it helps resolve whether the Town's policy falls under the umbrella of police protection and control.

The Town's police department has an off-duty employment policy for its peace officers that encompasses more than the coordination of private security services at issue here. When private residents request off-duty services, the Town sends out requests to Town-employed officers who could fulfill that role. If any officer responds that they are available for the job, the Town facilitates the introduction of the officer with the resident. If no Town-employed officer is available, the off-duty opportunity may be offered to another law enforcement agency's officer, such as in the case of Officer McCullers. Internally, the police department classifies off-duty employment as either Police Related Employment or Non-Police Related Employment. The coordination of off-duty private security services provided to residents, and that being performed by Officer McCullers, is

classified by the department as police related. Non-police related employment includes activities such as janitorial services. All off-duty employment must be approved by the Police Chief or his designee. The department coordinates this off-duty security service only with licensed peace officers.

Texas courts have consistently held that when a city's police activities are aimed at crime prevention, such activities are necessarily governmental. *See Martinez v. City of San Antonio*, 220 S.W.3d 10, 15–16 (Tex. App.—San Antonio 2006, no pet.) ("Although not a pure 'arrest and incarcerate' method of law enforcement," a city program aimed at suppressing gang activity through counseling, medical assessments, and job training was nevertheless governmental as a "crime prevention and reduction program"); *City of El Paso v. Gomez-Parra*, 198 S.W.3d 364, 369 (Tex. App.—El Paso 2006, no pet.) (holding that police activity of seizing and auctioning vehicles used in drug transportation is governmental due to statutory mandate that such vehicles are subject to forfeiture and proceeds of such sales are to be used for law enforcement purposes).

Unquestionably, police protection includes preservation and protection of the peace, of persons, and of property. *See* TEX. CODE CRIM. PROC. arts. 6.05 & .06. Police protection and control involves numerous policy making decisions, how to provide police protection and control or not to provide such protection, such as the number of officers, and the assignment of officers to particular duties or functions. *See, e.g.*, *Orozco v. Dallas Morning News, Inc.*, 975 S.W.2d 392, 397 (Tex. App.—

Dallas 1998, no pet.) ("[T]he government is immune from liability if the negligence that causes injury lies in the formulation of policy, such as whether and how to provide police protection, but the government might be liable if an officer acts negligently in carrying out that policy. This provision was intended to avoid judicial review of the discretionary policy decisions that governments must make in deciding how much, if any, police or fire protection to provide for a community.").

Appellees contend that the Town engaged in a proprietary function when it coordinated the hiring of Officer McCullers to provide private security services at the property. Appellees point to the TTCA's definition of proprietary functions as those that a "municipality may, in its discretion, perform in the interest of the inhabitants of the municipality." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(b). Because Officer McCullers was acting on behalf of a private party, and because his role ostensibly could have been performed by a private security guard, Appellees argue that the Town's coordination of his services was proprietary. This argument fails for three reasons.

First, Appellees ignore Subsection (c), the saving clause of Section 101.0215. After defining governmental and proprietary functions, and providing examples of each, the TTCA expressly states: "The proprietary functions of a municipality do not include those governmental activities listed under Subsection (a)." *Id.* § 101.0215(c). As such, it is immaterial whether the Town's policy benefited only its inhabitants. As we have said, "[i]f the City's actions are listed as a governmental function in the

–10–

TTCA, we have no discretion, regardless of the City's motives, to declare the actions as proprietary." *Homoky*, 294 S.W.3d at 814.

Second, both the Texas Supreme Court and this Court have rejected an argument identical to the one Appellees advance in this case. In *Guillory v. Port of Houston Authority*, Guillory, a privately employed longshoreman, leased a truck from the Port of Houston Authority. 845 S.W.2d 812 (Tex. 1993). After an accident involving the truck, Guillory sued his employer and the Port Authority, alleging against the latter that the truck was defective. *See id.* On appeal, Guillory argued that the governmental–proprietary dichotomy should be extended to all subdivisions of the State. *See id.* at 814. He further argued: "If an activity could be conducted by a private entity . . ., a governmental entity should not be immune from liability for conducting the same activity." *Id.* The Texas Supreme Court rejected both arguments and, as relevant here, explained:

> If we accepted Guillory's definition of proprietary activities to include anything a private entity could do, the waiver would be expansive. Private entities can provide police and fire protection, operate prisons, and adjudicate disputes, activities which are also governmental; there are few activities indeed which are uniquely governmental. To waive immunity for all others would virtually vitiate immunity entirely. Even if the proposed waiver were narrower, however, it remains a matter for the Legislature, as we have consistently held.

*Id.*

We similarly rejected the argument in *Homoky*. There, the plaintiff argued that "the act of placing boards and planters on the floor" of a golf course clubhouse is discretionary "because such acts 'could be performed by a private subcontractor.'"

–11–

*See Homoky*, 294 S.W.3d at 815 n.1. We explained, however, that the defendant city had "discretion to perform or not perform many activities in connection with its government functions [and n]either that discretion nor the existence of a profit motive reclassifies one aspect of a government function into proprietary conduct." *Id.* (citing *City of San Antonio v. Butler*, 131 S.W.3d 170, 178 (Tex. App.—San Antonio 2004, pet. denied)). For the reasons stated in *Guillory* and *Homoky*, we must reject Appellees' invitation to classify the Town's coordination of off-duty peace officers to provide security services as proprietary merely because it is a service that private parties can provide.

Finally, Appellees' argument fails because it impermissibly dissects the Town's coordination of off-duty security services from the Town's provision of police services overall and oversight under an umbrella Off-Duty Employment Policy. Appellees do not challenge the Off-Duty Employment Policy, other services provided thereunder, or the departmental classification of off-duty employment as Police Related or Non-Police Related. Rather, Appellees segregate for scrutiny one discrete off-duty employment opportunity and the Town's involvement in the coordination of same. The coordination of Officer McCullers's off-duty employment, however, existed in the context of broader police department policy involving the review and approval of off-duty peace officer activities in general. Appellees endeavor to impermissibly dissect the coordination of Officer McCullers's off-duty activity from the Town's broader policy relative to oversight

–12–

and approval of off-duty peace officer employment. As we have held, a plaintiff "may not split various aspects of a city's operation into discrete functions and recharacterize certain of those functions as proprietary." *See Homoky*, 294 S.W.3d at 815 (quoting *Butler*, 131 S.W.3d at 178). As such, we must reject Appellees' attempt to do so here.

## C.  Response to the Dissent

The Dissent would hold that the town's coordination policy does not fall within the ambit of police protection and control because the "Town coordinated private security services for private property owners." The Dissent explains that the fundamental purpose of the policy is private-loss prevention, even if its ultimate effect may have been crime reduction. For the purposes of this analysis, I see no difference between the two. The police are charged with enforcing the State's criminal laws, many of which are specifically aimed at protecting private interests. *See, e.g.*, *Richardson v. State*, 888 S.W.2d 822, 824 (Tex. Crim. App. 1994) ("Our burglary statutes are intended to protect the sanctity of private areas, be they habitations, buildings not open to the public, or vehicles."). Whether the police discharge that duty by posting an on-duty officer at a private residence, or alternatively coordinating the presence there of an off-duty officer, the outcome is the same—police protection.

The Dissent also contends that we cannot rest our holding on "the potential for activation of [a peace officer's] on-duty status." I do not agree that our holding

is limited in the way the Dissent describes. Our focus is on the Town's action, not the officer's status. The fact that Officer McCullers was off-duty, and would revert to on-duty status only if he witnessed a crime in progress, is of no moment. What matters is that the Town coordinated his presence at the property for the specific purpose of providing police protection.

Finally, after concluding that the Town's coordination of off-duty officers does not fall under the enumerated governmental function of police protection and control, the Dissent addresses the parties' arguments related to the Texas Supreme Court decisions in *Wasson I* and *II*. *See Wasson Interests, Ltd. v City of Jacksonville*, 489 S.W.3d 427 (Tex. 2016) (*Wasson I*) (case of first impression holding governmental–proprietary dichotomy applies to contract claims); *Wasson Interests, Ltd v. City of Jacksonville*, 559 S.W.3d 142 (Tex. 2018) (*Wasson II*) (analyzing whether contract claim arose from performance of governmental or proprietary function). Even if I were to agree with the Dissent that the Town's policy did not constitute police protection and control, I would not apply the *Wasson* factor analysis. *Wasson I* and *II* extended the TTCA's governmental–proprietary-function analysis to contract claims outside of the statutory construct of the TTCA and the plethora of legal authority thereunder. Their application to tort claims would unnecessarily complicate our analysis. Indeed, the *Wasson* factors were borrowed directly from Section 101.0215 of the TTCA. *See Wasson II*, 559 S.W.3d at 150 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 101.0215(a), (b)). Where, as here, we

–14–

are considering a tort claim, the statutory scheme of the TTCA provides a direct route for determining whether the Town's conduct is governmental or proprietary; we need not take a detour into the *Wasson* factors to resolve the issue.

## III. CONCLUSION

The issuance of three opinions for a discrete legal issue highlights the ongoing struggle associated with judicial analysis and application of the governmental–proprietary dichotomy, not only where expressly enumerated, such as under the TTCA,[5] but also in matters of first impression, as was the case in *Wasson I*.[6] It is the Legislature that is charged by the Texas Constitution with the responsibility of classifying municipal functions as governmental or proprietary. *See* TEX. CONST. ANN. art. XI, § 13. Should the Legislature endeavor to review the current jurisprudence on the governmental–proprietary dichotomy, it may also warrant a review of the "actual subjective awareness test" as set forth in *Cathey*, to address the realities of knowledge imputed to or acquired by governmental bodies. The parties in this case have endured uncertainty for 18 months and have the opportunity for one more level of review by the Texas Supreme Court. The citizens of the State of Texas and its governmental units deserve more certainty in the area of governmental immunity, which includes more meaningful guidance and clarity under current legislative immunity schemes as they exist and as they may be amended. Should the

---

[5] There are over 400 cases citing § 101.0215 of the TTCA.

[6] Nearly 100 cases have cited *Wasson I* and another 35 have cited *Wasson II* in the relatively few years since they were published.

Legislature decide that the judicial pronouncements or analysis, both in tort- and contract-based claims, are indeed not in keeping with its statutory scheme, it is certainly within the Legislature's authority to provide tailored guidelines about whether, when, and to what extent a litigant may sue a governmental entity or what constitutes actual notice. *See Tenorio*, 543 S.W.3d at 779 ("[W]hen the questions are of statutory construction, not of constitutional import, [the Legislature] can rectify our mistake, if such it was, or change its policy at any time, and in these circumstances reversal is not readily to be made.") (quoting *United States v. Buffalo Ry. Co.*, 333 U.S. 771, 774–75 (1948)). Until then, *Cathey*, *Tooke*, *Wasson*, and their progeny control.

Here, the record reflects a policy to permit off-duty employment of peace officers, review and approval of such employment, and its designation as either police related or non-police related. A decision on whether to utilize on-duty police officers to monitor property, vacant, under construction to prevent injury to property, or permit off-duty officers to provide a service at the behest of a resident is precisely the type of exemption necessary to avoid judicial review of governmental policy decisions.

Because the coordination and oversight of off-duty peace officer employment is characteristically a matter of police protection and control, it falls within the parameters of a governmental function under the TTCA, and Appellees were

required to comply with the statutory pre-requisites of written or actual notice. Because such notice was lacking in this case, I concur with the Majority.


/Bonnie Lee Goldstein/
BONNIE LEE GOLDSTEIN
JUSTICE


191431CF.P05